Valpak of Omaha, LLC, appellant,
v. Nebraska Department of
Revenue et al., appellees.
___ N.W.2d ___

Filed March 27, 2015.    No. S-14-125.

1.  **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.
2.  ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3.  **Administrative Law: Appeal and Error.** In an appeal under the Administrative Procedure Act, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports the district court's findings.
4.  **Administrative Law.** Agency regulations that are properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.
5.  **Ordinances: Presumptions: Proof.** In considering the validity of regulations, courts generally presume that legislative or rulemaking bodies, in enacting ordinances or rules, acted within their authority, and the burden rests on those who challenge their validity.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Affirmed.

William Hargens, Nicholas K. Niemann, and Matthew R. Ottemann, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and L. Jay Bartel for appellees.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.

NATURE OF CASE

Between October 1, 2004, and December 31, 2009, Valpak of Omaha, LLC (Valpak), paid over $5.5 million to Val-pak

Direct Marketing Systems, Inc. (Direct Marketing), to print direct mail advertisements and distribute them in and around Omaha, Nebraska. When Valpak was assessed use taxes on that amount, it asked for a redetermination that no taxes were due. It claimed that the payments to Direct Marketing were not transactions that were subject to use taxes under Nebraska law.

The Tax Commissioner of the Nebraska Department of Revenue (Department) rejected Valpak's argument and denied its petitions for redetermination. The district court affirmed, and Valpak now appeals. Because we conclude that Valpak was liable for use taxes on its payments to Direct Marketing, we affirm the judgment of the district court which affirmed the decision of the Tax Commissioner.

## SCOPE OF REVIEW

[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Nebraska Account. & Disclosure Comm. v. Skinner*, 288 Neb. 804, 853 N.W.2d 1 (2014). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Skinner, supra*.

[3] In an appeal under the Administrative Procedure Act, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports the district court's findings. *Skinner, supra.* "But '[t]o the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.'" *Id.* at 806, 853 N.W.2d at 6 (alteration in original).

## FACTS

### BACKGROUND

Valpak is a Nebraska limited liability corporation with its principal place of business in Omaha. It is owned by Scott Farkas and Mary P. Rogers-Farkas and is a franchisee of Direct Marketing. Direct Marketing is a Delaware corporation with its principal place of business in Florida.

Direct Marketing sells advertising and marketing services. Principally, it offers "cooperative direct mail services," which services consist of printing and distributing "cooperative direct mail advertising." This advertising is a "method of advertising in which advertisements from multiple businesses are included in a single envelope or package for mailing."

The cooperative direct mail advertising offered by Directing Marketing employs "VALPAK® Envelopes" (envelopes), which bear one or more of Direct Marketing's trade names, trademarks, or logos. The envelopes are filled with multiple printed advertisements from national, regional, and local advertisers.

Direct Marketing distributes the envelopes according to a "unique proprietary segmentation system" that allows for targeted advertising. This system is based on "Neighborhood Trade Areas." Each "Neighborhood Trade Area" (NTA) is a "geographic area containing 10,000 residential addresses" that have been grouped "based on income demographics, purchase behaviors, proximity to retail shopping locations, traffic patterns and postal carrier routes." The envelopes sent to each NTA contain different advertisements. Purchasers of Direct Marketing's cooperative direct mail services designate which NTA's should receive their advertisements.

### PRODUCTION AND MAILING
### OF ENVELOPES

As one of Direct Marketing's franchisees, Valpak "sells and markets" Direct Marketing's cooperative direct mail services to businesses who wish to have advertisements included in the envelopes. Henceforth, we refer to such businesses as "clients."

At the beginning of the production and mailing process, clients enter into a "Participation Agreement" with Valpak. This agreement specifies the "amount and type of advertising services purchased," which NTA's the client wants to target, and with what frequency the client wants its advertisements included in the envelopes. Through the agreement, Valpak "agrees to provide . . . assistance in planning and preparation of rough copy, proof, printing, insertion, addressing, postage, envelopes, and mailing distribution specified in this agreement."

A client often provides its own art for its advertisements. Where the client does not, the art is created by Direct Marketing using a template chosen by the client, as well as information provided by the client. Whether supplied by the client or created from a template, all art is reviewed by Direct Marketing for compliance with production specifications (such as size and resolution) and intellectual property law.

Valpak places an order for the printing and mailing of advertisements by submitting an "Insertion Order" to Direct Marketing. Direct Marketing is responsible for (1) printing the advertisements, (2) collating them with other advertisements designated for delivery in the same NTA, (3) inserting the advertisements into the envelopes, and (4) labeling the envelopes for distribution to the residential addresses within the specified NTA. On a date set by Direct Marketing, it delivers the envelopes to a U.S. Postal Service facility in Florida to be sent by direct mail. At no point in the process does Valpak have physical possession of the advertisements or the envelopes. It receives a "*de minimis* number" of the envelopes for "record keeping or other business purposes."

For each "mailing" completed by Direct Marketing, Valpak receives an invoice and remits payment. Its clients do not receive an invoice from Direct Marketing. They are billed by and make payments to Valpak. Valpak does not collect sales taxes from its clients.

## LEGAL RELATIONSHIP BETWEEN VALPAK
## AND DIRECT MARKETING

The franchise agreement between Valpak and Direct Marketing states that Valpak is an independent contractor and "[d]ealer" of Direct Marketing. Valpak has the right "to sell, and place orders for distribution of advertising, Advertising Inserts, or other products and/or services offered by [Direct Marketing], to be placed in [the envelopes] to be distributed within the Territory." Valpak is contractually obligated to pay Direct Marketing "for Production of [the envelopes] for all Mailings within the Territory, and for any other products and services ordered from" Direct Marketing.

Under the franchise agreement, Direct Marketing is designated as the "sole publisher and distributor" of the envelopes. It is obligated to "produce and distribute, or arrange for the Production and distribution, of all" the envelopes, including the advertisements sold by Valpak. Direct Marketing provides "all goods and services in connection with the Production" of the envelopes. Valpak is prohibited from printing, publishing, or distributing the envelopes itself.

With certain exceptions not applicable to this case, Direct Marketing has no liability for any taxes, including use taxes, levied on Valpak "in connection with sales made, services performed or business conducted by [Valpak], or payments made to [Direct Marketing] by [Valpak]."

## TAX ASSESSMENTS

On January 2, 2008, the Department issued a "Notice of Deficiency Determination and Assessment" to Valpak indicating that it owed $183,071.72 in use taxes, plus penalties and interest, for the tax period from October 1, 2004, to October 31, 2007. The use taxes were assessed on "Untaxed Invoiced Amounts" and "Valpak Direct Marketing System Amounts." The amounts described as "Valpak Direct Marketing System Amounts" reflected payments made by Valpak to Direct Marketing for mailings.

On July 2, 2009, the Department notified Valpak that it owed $49,194 in use taxes, plus penalties and interest, for the tax period from December 1, 2008, to May 31, 2009. The use taxes were assessed on payments made by Valpak to Direct Marketing. During the proceedings that followed, the assessment was amended by stipulation of the parties and the amount of use taxes was reduced to $48,518.10.

On February 10, 2012, the Department issued a "Notice of Deficiency Determination" to Valpak indicating that it owed $185,697.27 in use taxes, plus penalties and interest, for the tax periods from November 1, 2007, to November 30, 2008, and June 1 to December 31, 2009. The use taxes were assessed on payments made by Valpak to Direct Marketing.

Together, the three assessments covered the tax period from October 1, 2004, to December 31, 2009, and assessed a total of $417,287.09 in use taxes on Valpak's payments to Direct Marketing. Because Valpak claimed that these payments were not subject to use taxes under Nebraska law, it did not pay any of the taxes in question. Instead, in response to the assessments, it timely filed three separate petitions for redetermination, which were consolidated for consideration. During the proceedings that followed, Valpak agreed to pay $1,367.40 of the use taxes assessed against it. The Department also agreed to reduce the assessment for the tax period from October 1, 2004, to February 28, 2005.

After an administrative hearing, the Tax Commissioner determined that Valpak was an "advertising agency" subject to use taxes under the Department's sales and use tax regulations, specifically 316 Neb. Admin. Code, ch. 1, § 056 (1994). The Tax Commissioner explained (1) that in *Val-Pak of Omaha v. Department of Revenue*, 249 Neb. 776, 545 N.W.2d 447 (1996), use taxes had been imposed on a licensee of Direct Marketing and (2) that the "business model and transactions" in the instant case did "not differ in any material respect from the business model and transactions" in *Val-Pak of Omaha*. The Tax Commissioner denied Valpak's petitions for redetermination, except for the use taxes assessed from October 1, 2004, to February 28, 2005, which the Department agreed to reduce.

Valpak petitioned for review with the district court, claiming that the hearing officer erred in "determining that the assessments of sales and consumers use tax set forth in the Notices (as amended) were correct." On January 14, 2014, the court affirmed the decision of the Tax Commissioner. It concluded that there were two alternative grounds for assessing use taxes against Valpak—the regulation upon which the Tax Commissioner had relied and Neb. Rev. Stat. § 77-2703(2) (Cum. Supp. 2004). In particular, the court found (1) that Valpak was an advertising agency for purposes of § 056 and (2) that Valpak "exercised sufficient rights and powers over the Envelopes with advertising inserts incident to ownership and possession to meet the statutory definitions of 'use' and 'purchase.'"

Valpak timely appeals. Pursuant to our statutory authority to regulate the dockets of the appellate courts of this state, we moved the case to our docket. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## ASSIGNMENT OF ERROR

Valpak assigns, restated, that the district court erred in concluding that Valpak was liable for use taxes on its payments to Direct Marketing.

## ANALYSIS

[4,5] The State's authority to impose use taxes is established by statute. See § 77-2703(2). However, there are various regulations which also relate to use taxes. See 316 Neb. Admin. Code, ch. 1 (2013). In particular, § 056 of the sales and use tax regulations addresses the imposition of sales and use taxes on advertising and advertising agencies. Agency regulations that are properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law. *Smalley v. Nebraska Dept. of Health & Human Servs.*, 283 Neb. 544, 811 N.W.2d 246 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 1631, 185 L. Ed. 2d 616 (2013). And, in considering the validity of regulations, "courts generally presume that legislative or rulemaking bodies, in enacting ordinances or rules, acted within their authority, and the burden rests on those

who challenge their validity." *Smalley*, 283 Neb. at 557, 811 N.W.2d at 256.

There is no challenge to the validity of § 056 in the instant case. Valpak did not bring a facial or as-applied challenge to § 056, and it does not argue that the Department exceeded its authority in enacting § 056. Thus, if Valpak was an advertising agency during the relevant tax periods, § 056 controls whether Valpak was required to pay use taxes on the payments in question.

The district court concluded that Valpak was an advertising agency governed by § 056 and that it was liable for use taxes pursuant to the regulation. We review these determinations for errors appearing on the record. See *Nebraska Account. & Disclosure Comm. v. Skinner*, 288 Neb. 804, 853 N.W.2d 1 (2014). Because we find no error on the record, we affirm.

### ADVERTISING AGENCY

Section 056 of the Department's regulations governs the imposition of sales and use taxes on purchases and sales made by advertising agencies. "An advertising agency performs advertising services and develops advertising materials for its clients." 316 Neb. Admin. Code, ch. 1, § 056.01 (1994). For purposes of § 056, advertising materials "include all types of printed material, audio tapes, video tapes, signs, posters, pictures, drawings, computer graphics, computer music, paste-ups, mechanicals, or other artwork." See 316 Neb. Admin. Code, ch. 1, § 056.05C(1) (1994). See, also, 316 Neb. Admin. Code, ch. 1, §§ 056.03C(1) and 056.04C(2) (1994).

In the instant case, the evidence established that Valpak provided advertising services. The participation agreement used by Valpak stated that it would provide "assistance in planning and preparation of rough copy, proof, printing, insertion, addressing, postage, envelopes, and mailing distribution" of advertisements. In practice, this "assistance" included assimilating the abundance of information provided by Direct Marketing and using it to guide clients through the process of developing advertisements to be included in the envelopes. Farkas testified that Valpak filtered through the "thousands" of blank templates available to find ones which were appropriate

for a particular client and selected "two or three" blank templates to present to that client. He explained that Valpak used its knowledge of "best practices" in advertising to explain to a client how it could design an advertisement to be most effective. And he stated that Valpak supplied its clients with research that was relevant to deciding where and how frequently to send advertisements.

We consider the services of assimilating information and using it to guide clients through the process of developing advertisements to be advertising services, as did Valpak. Per its own description, it had a franchise to "offer . . . [a]dvertising services."

There was also evidence that Valpak developed advertising materials. To develop is to "evolve (as an idea) into a clear, full, and explicit presentation (as in a drawing or specification)." See Webster's Third New International Dictionary of the English Language, Unabridged 618 (1993). As noted above, Valpak was integrally involved in the process of choosing a template for each client. It then obtained the necessary information from the client, filled in the template, "prepare[d] a draft," and submitted the draft to Direct Marketing as part of an "Insertion Order." Through such actions, Valpak evolved each of its clients' desires and ideas into explicit, full designs for advertisements that could be sent to Direct Marketing for production.

The paper advertisements which ultimately were printed from these designs qualified as advertising materials, because they were "printed material." See § 056.05C(1). Accordingly, it could be ascertained from the foregoing evidence of Valpak's activities that it developed advertising materials. Valpak itself describes the advertisements it helped to create as "advertising materials." See brief for appellant at 22.

The aforementioned evidence established that Valpak provided advertising services and developed advertising materials. Therefore, there was competent evidence to support the district court's finding of fact that Valpak was an advertising agency. This finding was neither arbitrary nor unreasonable.

In addition to being supported by competent evidence, the district court's conclusion that Valpak was an advertising

agency is consistent with *Val-Pak of Omaha v. Department of Revenue*, 249 Neb. 776, 545 N.W.2d 447 (1996), which recognized that a licensee of Direct Marketing was an advertising agency under the sales and use tax regulations. The version of § 056 in effect at that time differed in many respects from the current regulation. See 316 Neb. Admin. Code, ch. 1, § 056 (1984). But the use of the term "advertising agency" is consistent in both versions.

For purposes of applying the definition of an advertising agency, we find no significant differences between the actions of the licensee in *Val-Pak of Omaha, supra*, and of Valpak in the instant case. The licensee had an agreement with Direct Marketing that allowed it to sell advertisements that would be printed and distributed by Direct Marketing. The franchise agreement granted this same right to Valpak. The licensee entered into "'participation agreements' with local businesses" in which it "agreed to provide assistance in planning and preparing draft copies and proofs of the proposed advertising." See *id*. at 778, 545 N.W.2d at 448. Valpak agreed to provide identical services to its clients. The licensee "prepared the preliminary advertising material for submission to Direct Marketing" and then "forwarded" the advertisements to Direct Marketing to be printed and distributed. See *id*. at 778, 545 N.W.2d at 448-49. In this case, the evidence showed that Valpak also performed these tasks.

During the relevant tax periods, Valpak provided the same services to its clients as did the licensee in *Val-Pak of Omaha, supra*, and performed a substantially similar role in the development of advertisements. The actions of the licensee in *Val-Pak of Omaha* qualified it as an advertising agency. Therefore, by engaging in comparable actions, Valpak also acted as an advertising agency for purposes of the regulation.

### Tax Liability Under Advertising Agency Regulation

Section 056 of the Department's regulations imposes sales and use taxes on the purchases and sales of advertising agencies. Advertising agencies are taxed differently depending on whether they are designated as the agents of their clients. See

316 Neb. Admin. Code, ch. 1, § 056.02 (1994). In the instant case, Valpak was not designated as the agent of its clients. Accordingly, its tax liability must be determined according to 316 Neb. Admin. Code, ch. 1, § 056.05 (1994), which "applies when the client has not designated the advertising agency as its agent for tax purposes."

Section 056.05 imposes taxes on specific types of purchases made by an advertising agency. As is relevant for our purposes, 316 Neb. Admin. Code, ch. 1, § 056.05A (1994), imposes a tax "on labor or creative talent purchased from third-parties for the development or production of the ideas or for work on advertising materials." The tax is assessed against the advertising agency purchasing the labor or creative talent. See *id*.

Valpak's payments to Direct Marketing fall within the category of purchases for which an advertising agency must pay taxes under § 056.05A. During these proceedings, Valpak conceded that its payments to Direct Marketing constituted purchases of services. Valpak stated that it purchased services only and that it did not purchase any tangible property. In light of this concession, we treat the entire amount of Valpak's payments to Direct Marketing as corresponding to purchases of services.

The services purchased with Valpak's payments to Direct Marketing were those performed by Direct Marketing in completing mailings, including printing and collating advertisements, inserting the advertisements into the envelopes, labeling the envelopes, and delivering the envelopes to the U.S. Postal Service. Valpak's purchase of these services was functionally equivalent to the purchase of the labor required to perform such services. And such labor was performed during the production of paper advertisements that constituted advertising materials. Thus, we conclude that each time Valpak remitted payment to Direct Marketing for the services it provided, Valpak purchased labor for work on advertising materials. In the case of some payments, Valpak also purchased creative talent for work on advertising materials, because Direct Marketing's services occasionally included creating artwork for advertisements.

The entire amount of Valpak's payments to Direct Marketing was taxable under § 056.05A, because those payments constituted purchases of labor and, in some cases, creative talent for work on advertising materials. The regulation speaks of taxes generally and does not differentiate between sales and use taxes. See *id*. However, it is well established that if an "item is purchased in Nebraska, the sales tax applies. If the item is purchased outside of Nebraska, the use tax applies." See *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 119, 459 N.W.2d 519, 526 (1990). Accordingly, the taxes imposed on Valpak's purchases from Direct Marketing, a Florida business, were properly classified as use taxes.

Under § 056.05A, Valpak was required to pay use taxes on the payments it made to Direct Marketing. Therefore, the district court did not err by upholding the assessment of such taxes on those payments.

## CONCLUSION

For the foregoing reasons, we find no error on the record in the district court's conclusion that under § 056 of the Department's regulations, Valpak was an advertising agency and was liable for use taxes on its payments to Direct Marketing. Therefore, we affirm the judgment of the district court which affirmed the decision of the Tax Commissioner to deny Valpak's petitions for redetermination.

AFFIRMED.

HEAVICAN, C.J., participating on briefs.

---

THOMAS R. GRIFFITH AND HEATHER GRIFFITH,
APPELLEES, v. DREW'S LLC, APPELLANT.

___ N.W.2d ___

Filed March 27, 2015.    No. S-14-456.

1. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the party's brief.
2. **Courts: Appeal and Error.** The district court and higher appellate courts generally review appeals from the county court for error appearing on the record.